IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HADDONBROOK ASSOCIATES,

          Plaintiff,

  v.

GENERAL ELECTRIC COMPANY,

          Defendant.

HON. JEROME B. SIMANDLE

Civil No. 08-0014 (JBS)

**OPINION**

APPEARANCES:

Dakar R. Ross, Esq.
ROSS LAW FIRM
P.O. Box 297
Franklinville, NJ 08322
    Counsel for Plaintiff

Louis Cappelli, Jr., Esq.
FLORIO PERRUCCI STEINHARDT & FADER, LLC
108 Euclid Street
Woodbury, NJ 08096
    Counsel for Plaintiff

Paul H. Schneider, Esq.
GIORDANO, HALLERAN & CIESLA, PC
125 Half Mile Road
Box 190
Middletown, NJ 07748
    Counsel for Plaintiff

Cynthia Stencel Betz, Esq.
Arnold L. Natali, Jr., Esq.
Steven Howard Weisman, Esq.
Craig William Davis, Esq.
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
    Counsel for Defendant

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This tort matter is before the Court on Defendant's motion for summary judgment.  [Docket Item 34.]  Because, as explained below, Plaintiff's claim is barred by the applicable statute of limitations, the Court will grant Defendant's motion.

## II.  BACKGROUND

This case involves a polluted landfill site and its proximity to a proposed luxury home development.  Between 1966 and 1978, Buzby Brothers Materials Corporation ("BBMC") operated a landfill on several parcels of land in Voorhees Township, New Jersey.  BBMC leased one of the parcels from Radio Corporation of America ("RCA"), a predecessor of Defendant General Electric Company.  From 1962 to 2000, Plantation Homes, Inc. ("Plantation"), the entity that eventually sold the land to Plaintiff, owned a parcel of land that sits adjacent to the parcel RCA leased to BBMC.

According to the State of New Jersey, from around 1972 to 1974, hazardous substances were disposed of in the landfill and discharged onto the land and into the surrounding waters.  (See Weisman Cert., Ex-43, at 3 ("Whitman Report") (citing an NJDEP Administrative Consent Order).)

2

In 1987, Voorhees Township adopted a resolution that prohibited construction of buildings within 500 feet of the Buzby Landfill.  (Weisman Cert., Ex-17 ("Resolution 194-87").)  According to Plaintiff, a legal action challenging the moratorium in 1990 resulted in a settlement among the parties permitting development within the 500 foot corridor so long as each agreement of sale contained a special deed covenant acknowledging the contamination and agreeing to release the township from any liability.  (Weisman Cert., Ex-20 ("Thatcher Letter").)  According to Plaintiff, the contents of the settlement are now the general Voorhees township policy with regard to development in the 500 foot zone.  (Schneider Cert., Ex-2, at 4 ("EcolSciences Report").)  Plaintiff's expert appraiser identified the stigma resulting from the required special deed covenant as the key factor preventing development.  (Schneider Cert., Ex-1, at 43 ("Darpino Appraisal").)

On October 23, 1987, eighty-five citizens filed an action pursuant to several environmental statutes against RCA and the Voorhees Township, among others.  Under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), liability for cleanup of a contaminated site may be imposed on Potentially Responsible Parties ("PRPs") including but not limited to the owner of the contaminated facility and any person who at the time of disposal of any hazardous substance

owned or operated any facility at which such hazardous substances were disposed of.  42 U.S.C. § 9607(a)(4).  In 1990, the plaintiffs in that action settled their portion of the lawsuit.

In 1991, GE, as successor in interest to RCA, asserted claims against numerous defendants to recover costs expended on the cleanup of the site resulting from the settlement.  <u>General Elec. Co. v. Buzby Bros. Materials Corp.</u>, Civ. A. No. 87-4263, 1996 WL 608488 (D.N.J. June 20, 1996).  During the pendency of that case, in 1993, the New Jersey Department of Environmental Protection ("NJDEP") entered a Administrative Consent Order that required the PRPs to undertake expansive investigatory and remedial activities aimed at remediating the contamination in and around the landfill site.  Thereafter, the NJDEP and the signing parties agreed to a Remedial Investigation Work Plan in order to implement the terms of the Administrative Consent Order.  That remediation is ongoing.

In 1994, Plantation sought leave to intervene and file a complaint in Defendant's cost recovery action.  Plantation's proposed complaint was substantially similar to the present complaint, claiming damages for nuisance, negligence, and strict liability.  (Weisman Cert., Ex-13 ("1994 Complaint").)  The complaint alleged that "[t]he defendants disposed or permitted disposal of toxic and hazardous waste at [the Landfill]" resulting in Plantation's inability to develop the property

because of the Voorhees township moratorium.   (<u>Id.</u>)   The motion
to intervene was denied.

In July 2000, Joseph Samost, sole owner and president of
Plantation, executed a deed in lieu of foreclosure transferring
the property to Plaintiff (a partnership between Joseph Samost,
his wife, and his daughter) for the sum of $1.  (Weisman Cert.,
Ex-6 ("Sale Deed").)  Samost, as president of Plantation, had
submitted a certification in support of Plantation's 1994 motion
to intervene, in which he acknowledged that he had reviewed the
allegations asserted in the 1994 Proposed Complaint, testifying
that these allegations were true and accurate.  (Weisman Cert.,
Ex-14 ("Samost Cert.").)  Samost was therefore aware of the
contamination and the consequent Voorhees township restrictions
on Plaintiff's property 13 years before this action.[1]

On November 14, 2007, Plaintiff brought this action in New
Jersey Superior Court.  Plaintiff alleges that it has been unable
to commence construction work on a luxury home development on its
property because of the environmental hazards created by disposal
of waste at Buzby Landfill, and in particular Defendant's portion
of the landfill.  Plaintiff asserts a claim for strict liability
(Count I), based on Defendant's predecessor's acceptance and
disposal of hazardous substances adjacent to privately-owned

---

[1]  There is some evidence suggesting Samost was aware of the
facts as early as 1987, but the difference between 1987 and 1994
does not appear to be relevant to this action.

property; a claim for nuisance (Count II), based on the environmental hazards on Defendant's land that Plaintiff alleges continue to interfere with its property; and a claim for negligence (Count III), based on Defendant's predecessor's failure to ensure that the operations and activities of the Buzby Landfill complied with state and federal laws and breaches of duties of reasonable care.[2]  Plaintiff seeks damages for the diminution in the value of the land, rather than any injunctive relief that may be available.

Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction.  On summary judgment, Defendant argues that this action is barred by the applicable statute of limitations, that Plaintiff cannot prove Defendant was the proximate cause of its injuries, that Plaintiff assumed the risk of the harms at the time of purchase in 2000, and that Plaintiff's damages are too speculative for the court to award Plaintiff relief.  Because the Court finds that the action is barred by the statute of limitations, the Court does not reach the other arguments advanced by Defendant.

_____

[2]  Plaintiff originally asserted a fourth claim for trespass, on which this Court granted Defendant's summary judgment in an opinion and order of March 13, 2009.  [Docket Items 24 & 25.]  The Court found that Defendant had court authorization to enter Plaintiff's property to build and use monitoring wells, and was therefore not trespassing.  [Id. at 15-16.]

6

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

Where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's

case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In

the event that there is an absence of evidence to prove an

essential element of the case "there can be 'no genuine issue as

to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Celotex, 477

U.S. at 323.


    **B.  Statute of Limitations**

    Based on Joseph Samost's 1994 declaration that he was aware

of the facts contained in the 1994 complaint, which included

facts about the environmental contamination and that the property

was by that time unusable for development, Defendant asserts that

all of Plaintiff's claims are time-barred by the 6 year statute

of limitation on such torts contained in N.J. Stat. Ann. 2A:14-

1.[3]  Plaintiff's only counter-argument is that the claims are

timely under the continuing tort doctrine.

    The continuing tort doctrine holds, almost as a matter of

tautology, that a tort claim related to conduct more than six

years old will not be time-barred if "each injury allegedly

constitutes a new tort, because each injury contains all the

elements of a tort, without any need to refer to prior actions to

---

    [3]  The Uniform Partnership Act imputes knowledge of a
partner to the partnership.  N.J. Stat. Ann. 42:1A-3(f).

establish liability." Russo Farms, Inc. v. Vineland Bd. of
Educ., 675 A.2d 1077, 1086-87 (N.J. 1996); see Kolczycki v. City
of East Orange, 722 A.2d 603, 610 (N.J. Super. Ct. App. Div.
1999).  When such torts are related to older, barred claims, they
are termed "continuing torts," and treated as new torts for the
purposes of the statute of limitations even though a plaintiff
could have anticipated them based on past conduct.

     The New Jersey Supreme Court in Russo distinguished between
continuing torts and past torts that have continuing injuries.
The court rejected the application of the continuing tort theory
to a claim for negligent construction of a building that occurred
more than six years before suit, even though the result of the
negligent construction was ongoing flooding.  Russo, 675 A.2d at
1091.  Although the breach of duty continued to cause injury in
the form of repeated flooding until the time of the suit, the
court found the action to be barred because "a wrongful act with
consequential continuing damages is not a continuing tort. . . .
It is only when the new injury results from a new breach of duty
that a new cause of action accrues. . . . That they never
corrected the problem does not render the tort continuing." Id.
(emphasis added).

     Conversely, the Court found a nuisance claim based on the
same facts to be timely because a duty to abate a nuisance is
ongoing, and such torts accrue continuously so long as the injury

9

continues.  Id. at 1086.  Like injuries resulting from battery, each new injury resulting from the nuisance represents a new breach of the tort duty.  Because each of the elements of a nuisance claim is satisfied on an ongoing basis so long as the nuisance can still be abated, it is irrelevant when the initial actions that led to the condition causing interference occurred.

Plaintiff's complaint is too vague to ascertain whether Plaintiff's claims constitute continuing torts, or merely continuing injuries from past torts.  The complaint does not specify with sufficient detail the conduct alleged to breach the various tort duties, nor the specific nature of Plaintiff's injuries.  However, Plaintiff's opposition to summary judgment and representations at oral argument clarify and explain what injuries and unlawful conduct Plaintiff is asserting.  (Pl.'s Br. Opp. Summ. J., at 21-23; Pl.'s Supp. Br. Opp. Summ. J., at 1, 5-6.)  Plaintiff identifies the continued migration of contaminated water from Defendant's land and Defendant's continued failure to prevent that migration as the relevant conduct occurring within the statutory period.  (Id.)  At oral argument, Plaintiff's counsel characterized the injury as the continued stigma and depressed value of the land resulting from the contamination.

Plaintiff's allegations of negligence and strict liability are time-barred.  Plaintiff does not assert any newly breached duty other than the nuisance-related duty to abate the

contamination, and Plaintiff does not identify any conduct for which Defendant is strictly liable occurring during the last six years.  Failure to remedy the harm resulting from past negligence is not itself a new breach of the standard of care for the purposes of negligence.  Russo, 675 A.2d at 1091 ("That they never corrected the problem does not render the tort continuing.").  And Plaintiff does not argue that failure to abate the flow of contamination on Defendant's property (as distinct from the earlier failure to prevent the contamination in the first place) brings Defendant within the scope of strict liability contemplated by DEP v. Ventron Corp., 468 A.2d 150 (N.J. 1983), as opposed to mere nuisance.

Plaintiff's nuisance claim is not as clearly barred, as Plaintiff has adduced evidence of ongoing migration of various noxious substances from Defendant's property, which Defendant may theoretically have an ongoing duty to abate.  (See EcolSciences Report; Schneider Cert. Ex-3 ("Goldstein Report"); Darpino Appraisal.)

Defendant argues that regardless of the continued migration of contaminants in the groundwater, the extent of damage to the value of the property that occurred as a result of the contamination happened in its entirety more than six years ago. Plantation's 1994 complaint, the details of which Joseph Samost was aware, states that the property was not developable.  (1994

11

Complaint ¶36 & ¶59.)  And Plaintiff's 2005 appraisal of the
property concluded that the market value of the Haddonbrook
property was $0 because of the stigma associated with the special
deed covenant requirement.  (Darpino Appraisal at 3.)  The
uncontested evidence indicates that the value of the property was
completely diminished before 2001, and that there was no further
injury to the value of the property caused by continued migration
of pollutants.  Thus, Defendant argues, Plaintiff has not
experienced any new nuisance-related injuries within the statute
of limitations.

Plaintiff does not quarrel with the finding that Plaintiff
was aware of the diminution in value of the property since 1994.
Instead Plaintiff argues that the continued migration of
pollutants, combined with Plaintiff's continued inability to
develop the property, is a continuing tort even if the value of
the property was completely diminished over a decade before the
filing of this action.

Plaintiff relies extensively on an unpublished opinion from
this district, Champion Laboratories, Inc. v. Metex Corp., No.
Civ. 02-5284(WHW), 2005 WL 1606921 (D.N.J. July 08, 2005).  In
that case, Champion sued Metex based on the migration of
groundwater pollutants to its site for, among other things,
negligence, strict liability, and nuisance.  The court found that
Metex's contamination constituted a continuing violation because

the ongoing remediation suggested that the contamination could still be abated.  Id. at *5.

        While purporting to base its holding on Russo, the court in Champion relied on a statement of the continuing tort doctrine taken from an employment discrimination case, Ali v. Rutgers, 765 A.2d 714 (N.J. 2000).  That case states that "When an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases."  Ali, 765 A.2d at 717.  This statement of the doctrine is problematic when taken from the employment discrimination context and applied to the environmental tort context because it conflates tortious conduct and injury.  The clear holding of Russo is that "it is only when the new injury results from a new breach of duty that a new cause of action accrues." Russo, 675 A.2d at 1091.  None of the cases in the Ali line of employment discrimination precedent refer to Russo.  Ali's statement of the doctrine is not inherently inconsistent with Russo so long as it is applied in the employment discrimination context.  In that context, the existence of continued discrimination necessarily means there is an ongoing violation of the law and ongoing injuries.  Thus, a continual and cumulative pattern of discrimination necessarily means that new injuries are resulting from new conduct violating the law and thus a new cause of action accrues with each injury.

13

In the environmental tort context, however, the existence of a potentially harmful condition, the breach of a duty, and an injury resulting in damage are all independent from each other - and may not occur at the same time, if at all.  One often has new injuries without new tortious conduct, as explicated at length in Russo.  Russo, 675 A.2d at 1091.  And, similarly, there may be an ongoing environmental condition created by tortious conduct or maintained by tortious conduct without there being new injuries from it.  It is thus necessary to apply Russo's more nuanced statement of the doctrine in the environmental tort context.

The injury claimed in this case is Plaintiff's inability to develop its land.  Diminution of the value of property is typically the harm associated with a permanent nuisance.  See Frank v. Environmental Sanitation Management, Inc., 687 S.W.2d 876, 883 (Mo. 1985) (finding stigma to be a permanent injury not capable of abatement).  It is unusual to permit value-diminution damages on continuing tort claims.  See Carson Harbor Village, Ltd. v. Unocal Corp., 287 F. Supp. 2d 1118, 1203 (C.D. Cal. 2003) ("Because they can be abated, however, parties alleging the existence of a continuing nuisance may not recover diminution in value damages.")  Recovery for value-diminution makes little sense in the context of continuing tort because if a nuisance can be abated (as it must to constitute a continuing tort), then the damage to appurtenant property is not permanent, and therefore a

14

measure of damages that assumes permanent injury would be
inappropriate.

When, as in this case, not only is the claimed injury value
diminution, but it is acknowledged the value of the subject land
was completely diminished outside the statute of limitation, the
claimed injury is not the kind of new injury permitting
application of the continuing tort doctrine.  If Plaintiff had
claimed other injuries (and supported them with some evidence),
perhaps based on the incremental increase in contamination caused
by the continued migration of contaminated water, these may have
qualified as new injuries to the extent that Defendant is capable
of abating that water flow.   Without any discrete injuries
suffered within the limitations period, there are no continuing
torts upon which Plaintiff may rest its cause of action.  Lyons
v. Township Of Wayne, 888 A.2d 426, 430-31 (N.J. 2005) (citing
Russo, 675 A.2d at 1094.)[4]

The Court's holding today is narrow.  It is based on the
unique facts of this case in which Plaintiff was aware that the

---

[4]  Because the Court finds that Plaintiff has not adduced
evidence of any new injuries occurring within the statutory
period, the Court need not reach the separate question of whether
Plaintiff has adduced evidence that the nuisance continues to be
capable of abatement.  Russo, 675 A.2d at 1086 ("[A] nuisance is
continuing when it is the result of a condition that can be
physically removed or legally abated.").  Indeed, without a new
injury as a result of the contamination after 2001 for the Court
to analyze, it is difficult or impossible to assess the
possibility of some measure of abatement that would have
prevented the injury.

value of its land had been completely diminished and elected not to bring an action for damages based on this total injury to the value of the land until well over a decade after it was discovered.  The Court takes no position with respect to any other claims Plaintiff may have had or may still have against Defendant with respect to the landfill and its remediation, such as claims for injunctive relief or abatement.  The court holds only that this suit seeks solely monetary relief for an injury (total diminution of the property's value) for which the time for a suit to recover damages has long past.

**IV.   CONCLUSION**

Because Plaintiff was aware of the complete diminution in value of the property as a result of Defendant's conduct by 1994 at the latest, in order to avail itself of the continuing tort doctrine, Plaintiff would have to identify new injuries caused within the statutory of limitations.  Plaintiff has not done so. The Court therefore finds Plaintiff's claims to be untimely pursuant to the six year limitation period in N.J. Stat. Ann. 2A:14-1, and grants Defendant summary judgment.  The accompanying Order shall be entered.

**February 25, 2010**                         **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              United States District Judge